[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 367.]

CINCINNATI BAR ASSOCIATION *v.* LANGE.

[Cite as *Cincinnati Bar Assn. v. Lange*, 1995-Ohio-332.]

*Attorneys at law—Misconduct—Indefinite suspension—Neglecting an entrusted legal matter—Intentionally failing to seek client's lawful objectives— Intentionally failing to carry out contract for employment—Intentionally causing client prejudice or damage—Conduct involving dishonesty, fraud, deceit, or misrepresentation—Knowingly making false statement of law or fact—Failing to maintain client's funds separately from attorney's in an identifiable bank account—Filing to maintain complete records of client's property in attorney's possession and to account appropriately to client— Failing to cooperate in investigation of alleged misconduct—Failing to promptly pay or deliver funds to client.*

(No. 95-798—Submitted June 21, 1995—Decided August 30, 1995.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 94-30.

———————————

{¶ 1} By an amended complaint filed on October 24, 1994, relator, Cincinnati Bar Association, charged respondent, William C. Lange, last known address in Cincinnati, Ohio, Attorney Registration No. 0005162, with three counts of professional misconduct. The complaint and amended complaint were served upon respondent pursuant to Gov.Bar R. V(11)(B) (when attorney admitted to Ohio Bar becomes nonresident or conceals his whereabouts, Clerk of Supreme Court is attorney's agent for service of any notice provided in disciplinary proceedings), but he did not answer. A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court heard the matter on relator's motion for default, filed pursuant to Gov.Bar R. V(6)(F).

**{¶ 2}** With respect to Count I of the complaint, as amended, the panel found that respondent had violated DR 6-101(A)(3) (neglecting an entrusted legal matter), and 7-101(A)(1) (intentionally failing to seek client's lawful objectives), 7-101(A)(2) (intentionally failing to carry out contract for employment), and 7-101(A)(3) (intentionally causing client prejudice or damage), while representing Patsy S. Smith and her son, Michael S. Smith.

**{¶ 3}** Evidence established that Ms. Smith retained respondent in May 1992 to investigate allegedly improper withdrawals from her son's bank account at a savings and loan institution. By letter dated June 10, 1992, respondent advised Ms. Smith of his opinion that a claim against the savings and loan existed. Ms. Smith paid respondent $500 on June 22, 1992 for his services. On his request, Ms. Smith paid respondent another $215 on August 13, 1992 for filing fees associated with instituting a lawsuit against the savings and loan.

**{¶ 4}** Ms. Smith attempted to reach respondent repeatedly during the end of 1992 and the first half of 1993, but had little success. In December 1992, she learned that he had moved his office without advising her. Ms. Smith soon discovered on her own the location and telephone of his new office and continued her attempts to speak with him. On one or two of the few times Ms. Smith made contact with respondent, he suggested that he had been negotiating with the savings and loan, that he expected a settlement check in the near future, and that he would ask for a jury trial if the savings and loan did not produce the check. However, to Ms. Smith's knowledge, respondent never filed the suit or contacted the savings and loan concerning the allegedly improper withdrawals.

**{¶ 5}** Ms. Smith discharged respondent in July 1993 and requested that he provide the documents in her case file. In September 1993, apparently after he learned of her grievance with relator, respondent returned the $215 that Ms. Smith had paid for filing fees.

**{¶ 6}** Ms. Smith subsequently retained other counsel to investigate the withdrawals from her son's bank account. The savings and loan has raised a statute-of-limitations defense in response to the new attorney's inquiries about the matter.

**{¶ 7}** With respect to Count II, the panel found that respondent had violated DR 1-102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation); 6-101(A)(3); 7-101(A)(1), (2), and (3); 7-102(A)(5) (knowingly making false statement of law or fact); 9-102(A) (failing to maintain client's funds separately from attorney's in an identifiable bank account); and 9-102(B)(3) (failing to maintain complete records of client's property in attorney's possession and to account appropriately to client), while representing Richard Schmeig and his wife, Cynthia Schmeig. The panel also found that respondent had failed to cooperate in relator's investigation, a violation of Gov.Bar R. V(4)(G).

**{¶ 8}** Evidence established that the Schmeigs had retained respondent on a contingency-fee basis in August 1988 to sue Mr. Schmeig's employer for injuries he sustained on the job. Respondent subsequently filed a suit on their behalf against several defendants in the Hamilton County Court of Common Pleas.

**{¶ 9}** The Schmeigs agreed to a settlement with one of the defendants in the amount of $6,500. Respondent took one half of the settlement, or $3,250, in attorney fees and, by agreement with the Schmeigs, paid himself another $479.35 for fees earned in an unrelated domestic relations matter. Respondent paid $1,500 to Mr. Schmeig and retained the balance of the settlement amount, $1,270.65, purportedly in an escrow account, for costs.

**{¶ 10}** Respondent consistently represented to the Schmeigs that he was pursuing discovery in connection with the remaining defendants in their suit, and Mr. Schmeig thought the action was still pending as late as October 1993. However, the Schmeigs had difficulty reaching respondent, and he rarely returned telephone calls.

{¶ 11} Mr. Schmeig ultimately learned from court records that respondent had entered into an "Agreed Entry of Dismissal" with one of the defendants in his action on November 28, 1989. To Mr. Schmeig's knowledge, respondent took no further action in the case, and, in January 1991, it was dismissed as to all other defendants. All dismissals occurred without Mr. Schmeig's consent or knowledge.

{¶ 12} Mr. Schmeig also learned from court records that, in January 1992, respondent filed a new suit against one of the original defendants. To Mr. Schmeig's knowledge, however, respondent took no action to advance the new case. The defendant in the new case moved for summary judgment in December 1992, and respondent neither advised his clients nor attended the hearing on the motion. The summary judgment motion was granted on December 31, 1992.

{¶ 13} Despite the unfavorable December 31, 1992 ruling, respondent misrepresented to Mr. Schmeig in a March 23, 1993 letter that he was awaiting a decision on the summary judgment motion. Moreover, after the dismissals in the suit initially filed on the Schmeigs' behalf, respondent never accounted for the $1,270.65 that he had withheld from the settlement proceeds received from one of the defendants.

{¶ 14} During his deposition conducted in the course of relator's investigation, respondent promised to supply an accounting of the Schmeigs' settlement and records of his professional and trustee accounts. He did not do so.

{¶ 15} With respect to Count III, the panel found that respondent had violated DR 1-102(A)(4); 6-101(A)(3); 7-101(A)(1), (2), and (3); 7-102(A)(5); and 9-102(A) and (B)(4) (failing to promptly pay or deliver funds to client); and Gov.Bar R. V(4)(G), this time while representing August and Janice Ries.

{¶ 16} Evidence established that the Rieses retained respondent in July 1993 to represent them in a potential claim against the pet store from which they had purchased a diseased parrot in December 1992. The Rieses paid respondent a $150 retainer for his services. The Rieses also tried frequently to contact

respondent, but had no success. By letter dated August 10, 1993, Mrs. Ries corresponded with respondent, furnishing him with certain laboratory reports and a request that he provide a copy of the letter he was to write to the pet store about their complaint. On or about August 22, 1993, respondent wrote to the Rieses that the pet store had not responded to his inquiries and suggested that the Rieses provide a check for $270 made payable to the Butler County Clerk of Courts for filing fees and an additional payment of $750 for his fee. The Rieses forwarded a check for $1,020 to respondent on September 1, 1993.

{¶ 17} Thereafter, the Rieses had further difficulty making contact with respondent. They eventually reached him on October 4, 1993, at which time he told them that he had filed suit on their behalf approximately ten days before in the Butler County Court of Common Pleas. In early December 1993, the Rieses learned from the Butler County Clerk of Courts that no such complaint had been filed. On December 29, 1993, the Rieses wrote to respondent of their discovery and demanded the return of their $1,020. Respondent never replied to their letter and did not return their money.

{¶ 18} Respondent also promised during his deposition to provide records of his professional and trustee checking accounts in connection with the Rieses' grievance. He did not do so.

{¶ 19} In view of this misconduct and respondent's prior disciplinary record, see *Cincinnati Bar Assn. v. Lange* (1991), 57 Ohio St.3d 43, 564 N.E.2d 1069 (public reprimand for previous violations of DR 1-102[A][4] and 7-102[A][5]), the panel recommended that respondent be suspended indefinitely from the practice of law. The board agreed, adopting the panel's findings of fact, conclusions of law, and recommendation.

_____

*R. Patrick Riley* and *Thomas R. Smith*, for relator.

_____

**Per Curiam.**

{¶ 20} Upon review of the record, we concur in the board's findings of misconduct and recommended sanction. Accordingly, we order that respondent be suspended indefinitely from the practice of law in Ohio. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

COOK, J., dissents and would disbar respondent.

_____